IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN R. WYLIE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 CV 04542 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| WASTE MANAGEMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff John R. Wylie ("Wylie") filed this declaratory judgment action against Waste Management, Inc. ("WM") seeking a declaration that WM may not unilaterally alter the terms of a guaranty it gave Wylie when he purchased his home. Jurisdiction is proper under 28 U.S.C. §1332 as the amount in controversy is alleged to exceed $75,000 and the citizenship of the parties is diverse: Wylie is a citizen of Illinois and WM is a Delaware corporation with its principal place of business in Texas. WM moves to dismiss the suit under Federal Rule of Civil Procedure 12(b)(6),[1] arguing that the issues presented are subject to arbitration. For the following reasons, WM's motion to dismiss [12] is granted.

**BACKGROUND**

On July 30, 2003, Wylie bought a home in the Prairie Crossing development in Grayslake, Illinois. Prairie Crossing is located near a landfill owned by WM. WM, pursuant to an agreement with Prairie Crossing, issues homeowners a "New Home Value Guaranty" ("Guaranty"). Under the terms of the Guaranty, WM promises to compensate homeowners for

---

[1] WM also moved to dismiss under Rule 12(b)(1), arguing that the issue was not ripe for judicial review because, at that time, Wylie had not yet filed a claim under the guaranty and WM had not denied Wylie's claim. Because both of those events subsequently occurred, the court need not address WM's Rule 12(b)(1) arguments.

1

any difference between their sale and purchase prices. It further provides that if a homeowner is unable to sell their property, WM will purchase the property at the price the homeowner paid after a 180 day listing period ("Listing Period") expires. To claim the Guaranty, a homeowner need comply with the requirements set forth in Sections B and C, which provide, *inter alia*, that (1) the homeowner must have continuously owned the property for at least one year; (2) the homeowner must list the property with a broker approved by WM and keep it listed on the market for the Listing Period; (3) the homeowner must not reject any bona fide offer to purchase the property at an amount equal or greater to the price at which the homeowner purchased the property; (4) the homeowner must have maintained the property in "no worse than average condition"; and (5) the listing broker must inform WM of any offer to buy the property within three days of the receipt of the offer. Wylie's compliance with these requirements is not disputed.

Section D of the guaranty sets out the procedure by which homeowners may claim their Guaranty:

> D. Claims Procedure. In order to receive benefits under the Guaranty, the Homeowner must comply with the following procedures:
> 1. The Homeowner shall meet the notice requirements set forth under Section B.
> 2. Homeowner shall have complied with the provisions of Section C.
> 3. The Homeowner shall present a written Claim form to WM no later than ten (10) Business Days before the scheduled closing dates of the sale giving rise to WM's obligations under this Guaranty, or, if WM shall be obliged to buy the Property directly from Homeowners as a result either of WM's having notified Homeowners that an offer was unacceptable or of Homeowners' failure to receive, during the Listing Period, any Offers that result in a Sale, then such Claim for shall be submitted 30 days prior to the date on which Homeowners desire to convey title to WM.
>
> \* \* \* \*
>
> F. Disputed Claims. In the event that WM shall (I) fail to respond to a Claim within five (5) days of receipt, (ii) fail to pay, in a timely manner, a Claim which it has accepted or (iii) deny a Claim within five (5) days of receipt, the Homeowner's

2

> Association shall cause such matter to be arbitrated in accordance with the provisions of this section.
>
> * * * *
>
> 3. In the event that WM shall timely deny a Claim, then upon the Homeowner's written request, the Homeowner's Association and WM shall appoint an arbitrator to resolve the dispute, provided, however, that if the Homeowner's Association and WM shall be unable, within 10 days, to agree upon an arbitrator, within 10 days the Homeowner's Association and WM shall each appoint an arbitrator who shall within 10 days together appoint a third whose decision shall be binding upon WM and the Homeowners. If WM shall decline to participate in appointment of an arbitrator or fail to respond, the Homeowner's Association shall, acting alone, appoint an arbitrator. Such arbitration shall be conducted in accordance with the then current rules of the American Arbitration Association. In the event that the arbitration shall be decided in favor of the Homeowners, unless such amount shall have been paid by WM within 10 Business Days of such decision, then, the Homeowner's Association shall promptly pay to the Homeowners the amount provided in such decision, in accordance with the terms of the Undertaking.

Ex. A to Compl.

On March 23, 2009, Wylie entered into a contract to purchase another house at Prairie Crossing and listed their current house with a WM-approved broker. Through his attorney, Wylie notified WM that he would file a claim under the Guaranty if he could not sell his current house by the end of the six-month Listing Period.

On April 30, 2009, WM sent Wylie a letter stating, in relevant part,

> As you know, homeowners throughout the United States have experienced a dramatic decrease in the value of their homes due to the most serious lending and economic crisis facing the nations since the Great Depression. Waste Management is concerned that, under the certain circumstances, the Guaranty issued by Waste Management may be used in a way that was not intended. As such, Waste Management will be carefully reviewing any new claims submitted under the Program and may deny certain claims due, in part, to the difference in the guaranteed price under the Program being significantly higher than the current fair market value based on factors having nothing to do with the proximity of Prairie Crossing to the Countryside Landfill.
>
> For all new claims under the Program, Waste Management will need a fair market value appraisal of the home that can be considered at the time it evaluates a claim. The Home Value Guaranty provides Waste Management with only five days to accept or deny a claim. Therefore, we would like to work with you to ensure that the

> appraisal is completed at least 30 days prior to the end of your listing period. The costs of the appraisal will be paid by Waste Management and will be prepared by an independent appraiser. In addition, we would appreciate your advising us of the circumstances surrounding your decision to sell your home in Prairie Crossing. Specifically, why are you leaving the Prairie Crossing community and to what address are you moving? We would also like to receive this information at least 30 days prior to the end of your listing period. For those of you near the end of your 180-day minimum listing period, we will make arrangements to have your home appraised on an expedited basis.

Ex. D. to Compl.

Wylie filed this declaratory judgment action on July 28, 2009, seeking a declaratory judgment that the "Guaranty is unambiguous, valid and enforceable according to those unambiguous terms, and not subject to amendment or alteration by WM." Compl. at 9-10. Wylie further requests that WM be enjoined to "honor the original terms of the . . . Guaranty without the additional terms and conditions." *Id.* at 10. Wylie also alleges a claim for estoppel, arguing that WM is estopped from imposing new conditions on his exercise of the Guaranty. Subsequent to filing suit, the Listing Period expired, Wylie submitted a claim to WM and WM denied his claim. Pl.'s Resp. at 8.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). In order to survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis, it must establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, — U.S. —, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868

4

(2009); *see also Bell Atl.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

## ANALYSIS

WM moves to dismiss Wylie's complaint, arguing that his claims fall within the scope of the Guaranty's arbitration clause. The central purpose of the Federal Arbitration Act ("FAA") is to "ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobouno* v. *Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 53-54, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995) (citation omitted) (internal quotation marks omitted). "[W]hen a contract contains an arbitration clause, a strong presumption in favor of arbitration exists and courts have no choice but to order arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *CK Witco Corp.* v. *Paper Allied Indus., Chem. & Energy Workers Int'l Union,* 272 F.3d 419, 421-22 (7th Cir. 2001) (citation omitted) (internal quotation marks omitted). Furthermore, "once it is clear that the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration." *Miller* v. *Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998).

Wylie admits that the arbitration clause applies to denied claims but argues that the issue of whether WM may unilaterally alter the terms of the guaranty is outside the scope of the arbitration clause. Pl.'s Resp. at 10. This is a distinction without a difference, however, because the purpose of obtaining a declaration that WM may not unilaterally alter the terms of the agreement is to prohibit it from denying Wylie's claim. Indeed, Wylie explicitly asks that the court order WM to "honor the original terms of the . . . Guaranty without the additional terms and conditions." Compl. at 9-10. The Supreme Court has ruled that "in deciding whether the

parties have agreed to submit to a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T Techs, Inc.* v. *Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 64 (1986). In the context of this case, where it is undisputed that Wylie has fulfilled all the conditions set forth in the Guaranty, a declaration by this court as to whether WM was able to institute the conditions set forth in its April 30, 2009 letter, or, alternatively, whether WM is estopped from imposing those conditions, would be tantamount to determining whether the denial of his claim was proper – the precise issue covered by the arbitration clause. *See County of McHenry* v. *Ins. Co. of the West*, No. 04 C 2078, 2004 U.S. Dist. LEXIS 21329, at *7 (N. D. Ill. Oct. 26, 2004) (granting the defendant-insurer's motion to dismiss plaintiff-insured's action to enjoin the insurer from proceeding with an arbitration to determine whether it was entitled to reimbursement where ruling on the injunction would require the court to decide exactly that issue). Furthermore, the court notes that should Wylie proceed to arbitration and win, the instant controversy would be moot. Accordingly, this dispute falls within the arbitration clause and WM's motion to dismiss will be granted.

## CONCLUSION AND ORDER

For the foregoing reasons, Waste Management's motion to dismiss [12] is granted. The case is terminated.

Dated: July 21, 2010        Enter: _____
                                                                                     JOAN HUMPHREY LEFKOW
                                                                                     United States District Judge